## FRANK KELLEY v. THE STATE.

No. 4021. Decided April 12, 1916.

**1.—Robbery—Evidence—Introducing Testimony—Plea of Guilty—Practice—Other Offenses.**

Where, upon trial of robbery, the defendant entered a plea of guilty, this would not prevent the State from introducing other evidence to show the method of the robbery so the jury could determine the punishment to be assessed, neither was there error in showing that defendant resisted arrest and sought

to escape, etc., however, it was error to admit testimony of a prior attempt to rob different parties at a different place and time.

### 2.—Same—Rule Stated—Other Offenses—Evidence.

Where, upon trial of robbery with firearms, etc., the defendant pleaded guilty, and there was no question in the case as to the identity of the defendant nor of his intent to commit the robbery charged in the indictment, it was error to admit testimony of a prior attempted robbery by the use of firearms on the same night of the robbery and that when the parties attempted to escape defendant and his companions shot at them, even though said testimony was admitted upon the theory that the State has a right to show that defendant intended to kill the injured party if they resisted, etc., as in the instant case no resistance or attempt to escape was shown or that the defendant attempted to shoot or kill. Prendergast, Presiding Judge, dissenting.

### 3.—Same—Rule Stated—Other Offenses.

Upon trial of robbery with firearms, etc., where the defendant pleaded guilty and was given a sentence of ninety-nine years in the penitentiary, it was reversible error to admit in evidence testimony as to an attempted robbery by the same parties during the night of the instant robbery; the same being a different crime committed at a different time and place, and not a part of the res gestae of the transaction for which the defendant was being tried; the identity of defendant not being questioned and his intent to commit the robbery and the fact that he did rob the alleged injured party being proved and admitted, and no evidence that he was the character of man who would commit murder, if necessary to accomplish the robbery, was admissible when he had not put his reputation in issue. Prendergast, Presiding Judge, dissenting.

### 4.—Same—Evidence—General Reputation.

Upon another trial the State should not seek to prove that defendant had theretofore been confined in the penitentiary, unless he should testify or put his reputation in issue.

### 5.—Same—Argument of Counsel.

Upon another trial the prosecuting officer will confine his remarks to the evidence adduced upon trial and the legitimate deductions therefrom, and will not discuss matters de hors the record.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. L. Crawford, Jr.

Appeal from a conviction of robbery by firearms, etc.; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*Newton P. Morrison, El J. Gibson,* and *W. F. Bane,* for appellant.— On question of other offenses: Williams v. State, 65 Texas Crim. Rep., 193, 144 S. W. Rep., 622; Spriggins v. State, 60 S. W. Rep., 54; Hill v. State, 73 S. W. Rep., 9; Gray v. State, 178 S. W. Rep., 337; Overstreet v. State, 68 Texas Crim. Rep., 238, 150 S. W. Rep., 631; Bowman v. State, 70 Texas Crim. Rep., 22, 155 S. W. Rep., 940; Harris v. State, 55 Texas Crim. Rep., 469, 117 S. W. Rep., 839; Owen v. State, 58 Texas Crim. Rep., 261, 125 S. W. Rep., 405; Davenport v. State, 89 S. W. Rep., 1077; Bink v. State, 89 S. W. Rep., 1075.

On question of former conviction of defendant: Wyatt v. State, 124 S. W. Rep., 929; Mercer v. State, 66 S. W. Rep., 555.

On question of argument of counsel: Benson v. State, 56 Texas Crim. Rep., 52, 118 S. W. Rep., 1049; Wells v. State, 65 Texas Crim. Rep., 663, 145 S. W. Rep., 950; Daniels v. State, 71 Texas Crim. Rep., 662, 160 S. W. Rep., 707; Cooper v. State, 72 Texas Crim. Rep., 645, 163 S. W. Rep., 424; Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328; Coleman v. State, 90 S. W. Rep., 499; Spencer v. State, 90 S. W. Rep., 638; Battles v. State, 53 Texas Crim. Rep., 202, 109 S. W. Rep., 195.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of robbery, and his punishment assessed at ninety-nine years confinement in the State penitentiary.

When the defendant was called upon to enter a plea to the indictment he entered a plea of guilty. The indictment charged appellant with robbing J. M. Caywood. The evidence would show that appellant and Dave Weidner entered the office of the Oriental Oil Company, and, with pistols drawn, ordered the men present "to put up their hands," and this order was promptly obeyed. Appellant then went to the cash register and robbed it, while Weidner kept the men covered with a pistol. After accomplishing the robbery they backed out of the office. J. M. Caywood, on the trial, positively identified appellant as one of the persons who committed the robbery, as did also T. F. Caywood and B. B. Baker. Tod Ground, who was also present, was unable to identify appellant as the person who committed the robbery, but testified to the other facts in consonance with the testimony of the two Caywoods and Baker. When the State undertook by testimony to identify the weapon used by appellant on that occasion, the record shows that appellant admitted that one of the pistols offered in evidence was the pistol he used on that occasion.

Thus it is seen appellant admitted he was the person who robbed Caywood; that he used a firearm in effecting the robbery, and offered no evidence to contradict that state of facts. However, this would not prevent the State from offering and introducing evidence if it saw proper to show that appellant was the person who committed this robbery, and the mode and method of the accomplishment of this robbery, that the jury might determine as to the punishment that should be assessed. Neither do we think there was any error in admitting the testimony that when it was sought to arrest appellant for this identical offense, that appellant resisted arrest, the resistance offered, and that he sought to escape out of the window. There is a contention made that appellant did not know that the men attempting to arrest him were officers. If this was true, there might be merit in appellant's contention, but we think it manifest that appellant knew they were officers, for when one of the officers finally shot him through the hat as he put his head out of the window as if to escape, "he hollered he would give up, and surrendered."

However, as appellant made no contention as to his identity as the person who robbed Caywood; made no question that his intent was to rob Caywood by the use of firearms, and did rob him by that mode and means, in fact admitted this to be true by pleading guilty, we think the court erred in admitting the testimony of J. C. McFarland that appellant had also attempted to rob him that same night, at a point five miles·distant from the scene of the Caywood robbery, and that when he and the clerk in his drug store attempted to escape, appellant and Weidner, who was with appellant on both occasions, shot at him and his clerk four times. The court, in approving the bill, says: "That the above testimony was admitted in evidence in this case for the following reasons: The defendant is charged with the use of firearms, in committing the offense of robbery charged in the indictment in this cause; that the defendant within about an hour prior to the time of the robbery charged in this indictment attempted robbery of what is known as McFarland's drug store, situated in East Dallas and some five or six miles distant from the scene of the robbery charged in the indictment in this case. That the court admitted the testimony of the above witness for the reasons (1) that the jury should have been informed and should have in their possession knowledge of the intent of the defendant at the time the robbery in this indictment was committed; (2) the intent, not only to rob the oil station but the jury should also have been in possession of what use the defendant intended to make of his pistol in the event the keeper of the oil station refused to obey the defendant's command to put his hands up. It is true that the defendant and his principal, Dave Weidner, in the offense charged in this indictment, were identified by all the men who were in the oil station at the time same was robbed; yet, said robbery occupied·a period of only a few seconds' time."

It is thus seen that the court recognized there was no question in the case as to the identity of this defendant, nor of his intent to commit the robbery charged in this indictment, but he admitted the testimony on the theory that the State would have the right to show that the appellant intended to go further than robbery if Caywood had resisted, or sought to escape, and kill or attempt to kill him. Yet in the commission of the offense for which he was on trial, there was no resistance or attempt to escape, and no attempt on appellant's part to shoot or kill Caywood.

In the robbery of the McFarland store, at another place and time, McFarland did attempt to escape, and was shot at by appellant. In a case now before this court appellant has been tried for firing those shots and given fifteen years in the penitentiary for firing those shots. Then why should such testimony be admissible in this case? It could and would only go to the enhancement of the punishment to be assessed in this case, by showing that he attempted to kill a man who sought to escape while he was robbing him. It was a different crime, committed at a different time and place, and not being a part of the res gestae

of the transaction for which appellant was on trial, the identity of appellant not being questioned, and his intent to commit robbery and that he did rob Caywood being proven and admitted, no evidence that he was the character of man who would commit murder, if necessary to accomplish the robbery, was admissible, when he had not put his reputation in issue; and no evidence that he had committed other robberies, and in attempting to do so had also attempted to commit murder, was admissible. He may be and probably will be tried for each of these offenses, and when so tried adequate punishment assessed in each case, but as he did not shoot Caywood, nor attempt to do so in robbing him, evidence that he did attempt to rob McFarland, and shoot at him, was inadmissible under the facts in this case, and the court should have sustained the objection when made. Had appellant received the minimum punishment, as he admits his guilt, we might and would hold that the error was harmless, but appellant did not receive the minimum punishment; instead of five years, the jury assessed ninety-nine years against him, the evidence accomplishing the purpose for which it was introduced—increase of punishment.

On another trial the State's counsel will not seek to prove that appellant has heretofore been confined in the penitentiary, unless he should testify or put his reputation in issue. He did neither on this trial.

Again, the prosecuting officer will confine his remarks to the evidence adduced on the trial and legitimate deductions therefrom. He should not argue to the jury the horrors of a woman being choked to death with a handkerchief tied about her neck, in the suburbs of Dallas. Appellant is not shown to have had any connection with that crime. Nor shall he tell the jury, "The City of Dallas requires the execution of this defendant." The City of Dallas had nothing to do with the punishment to be assessed against this defendant. That was a question to be determined by the jury on the evidence they had, and the desires of no person should be made known to the jury in argument. Several other objectionable remarks were objected to, such as "This place is being infested by a band of highwaymen, and that good women are nightly sitting at their homes afraid their husbands will be knocked in the head by some highway robber." "We do know that men are found in the streets of Dallas knocked in the head and weltering in their blood. We do know that our fair women are murdered by highwaymen and that these crimes are being committed by some Red Kelley." "Every man who tied a handkerchief around an unsuspecting woman's neck and choked her to death had a mother," etc. Such remarks have no basis in the testimony on this trial. No woman was present when appellant committed the robbery he admitted committing. There was no evidence that he had ever assaulted any woman, choked one to death, or robbed a woman. In the excess of their zeal our prosecuting officers should not go beyond the record.

For the errors pointed out it will be necessary to reverse and remand this case, although appellant entered a plea of guilty, as the errors com-

mitted would and probably did contribute to the very high penalty assessed—ninety-nine years confinement in the penitentiary.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*


April 13, 1916.

PRENDERGAST, PRESIDING JUDGE (dissenting).—At first blush, it might seem that it was error for the court to permit the State to introduce evidence of the attempted robbery by appellant and his partner in crime of the persons at the McFarland drug store and his and his partner's shooting at these persons with intent to kill them, because they attempted, and did, escape from appellant and his partner at the time of that attempted robbery. It so seemed to me when this question was first presented in this case in oral argument, but upon mature reflection and investigation, I have reached the firm conviction and conclusion that said testimony was admissible, and that the trial judge made the proper ruling, admitting it. I will but briefly state the grounds of my opinion.

Intent of the accused in most crimes, and especially in this, is very material. One object of the law, and the Legislature in providing that the death penalty could be inflicted in a robbery case with firearms, was to let the State show, if it could, not only the robbery but that accompanying the robbery, the robber intended to also inflict death with his firearms in case of resistance or an attempt to escape, by the victim. Hence, that it was the intent of the robber to inflict death in this case to accomplish the robbery, was very material. It is, therefore, not only the privilege, but the duty of the prosecuting officer, to make such proof, if he can, so as to enable the jury to inflict the death penalty if the facts and the circumstances of the case justify it. One of the principal objects of the law in requiring the State to introduce proof upon a plea of guilty is for the very purpose of giving the jury all the facts so that they will thereby be enabled to assess punishment in accordance with the enormity of the crime. It is true, the jury might *infer* from robbery with firearms that the robber might have intended to inflict death to accomplish his robbery, but the State is not bound to rest alone on such *inference,* but in addition, may by proof show the actual intent to commit murder in the robbery, and if it can do so by legitimate evidence, it is its duty to do so.

If the State must be restricted to the immediate acts of the robbery, then all the jury would have would be that a robbery was committed with firearms and the circumstances were such as not to indicate with positiveness that the robber intended to kill, if he thought necessary, to accomplish the robbery. Suppose as an illustration, that the accused and his partner had stated expressly to friends just before the robbery, not only that they were going to rob or attempt to rob, as they did, but that if the parties robbed or any of them attempted any resistance or sought to escape being shot down, they intended to shoot and kill

them in such contingency. No one could question that that evidence would be admissible to enable the jury to know to what extent the robbers would go and their intent to kill in order to effect their crime. Of course, the State is not restricted to positive evidence alone, but it can resort, and should, to any facts or circumstances which would show such intent, or tend to do so.

Now, take the facts of this case. Appellant and his said partner in crime, on the night of the robbery in this case, armed themselves with deadly·weapons and started out in the hours of the night, with not only robbery as their intent, but murder, if necessary, to effect it. With these intentions they began their raid. They first went to the McFarland drug store, suddenly appeared therein, each with a six-shooter drawn, cocked and presented, demanding that the proprietor and his clerk throw up their hands, which order was promptly complied with. Then appellant made towards the cash drawer. In doing so, he and his partner for the moment, in their eagerness to get the cash, ceased to watch their victims. Their victims immediately concluded that they could escape so as to save their lives, not their money, and attempted to do so. As showing unquestionably their intent, the robbers proceeded to shoot each twice at their intended victims, with the intent to murder them, but not succeeding, they hastily beat their retreat. What did they then do? Did they abandon their intent to rob and to kill in order to accomplish it? By no means, but instead, on their same raid, during the same night, in the same city, they proceeded across the city to another portion of it to carry out their said intents to rob and to murder to accomplish it, and the same two principals in crime, with the same two deadly sixshooters, proceeded to rob, and the facts and circumstances would establish to any reasonable man that their intent in the robbery in this case was to inflict murder if their victims resisted or attempted to escape, because they had just shortly before this shown expressly that such was their intent. In my opinion the court was correct in admitting the evidence he did for the purpose of showing this intent to murder.

It is true and well established that ordinarily one crime can not be proven on the trial for another, but it is as equally well established, both in reason and on authority, that when intent is necessary or proper to be shown, it can be shown by evidence, even though that evidence involves the commission of another distinct crime. It would be proper under such circumstances, as the trial judge did in this case, to limit the introduction of that evidence to the purpose for which it was admitted, towit, intent.

For these reasons I am impelled by what I deem to be my duty to dissent from the reversal of this case.